ALLIE SMITH *v.* STATE OF MISSISSIPPI.

[43 South., 465.]

CRIMINAL LAW AND PROCEDURE. *Affidavit. Absent witness. Effect of admission. Instructions. Testimony of accused. Credibility. Witness. Cross-examination. Evidence. Comment on failure of accused to testify.*

Upon the second trial of an accused charged with homicide, the defendant being the only witness to the killing in his behalf, it was error:—

(*a*) To permit the state to show that the defendant's absent witness was present but not introduced by him at the former trial, the state having agreed that the witness if present would testify as shown in an affidavit read to the jury; and

(*b*) To allow the state to ask defendant when testifying in his own behalf, whether he had testified in his previous trial; and, without reference to whether the trial be a first or other one,

(*c*) To instruct the jury at the instance of the state that they should, in weighing the evidence, take into consideration defendant's interest in the result of the trial; and

(*d*) To allow the state to show on cross-examination of a witness that he claimed a reward for arresting the accused.

FROM the circuit court of, first district, Chickasaw county. HON. EUGENE O. SYKES, Judge.

Smith, the appellant, was indicted for murder, tried and convicted of manslaughter, sentenced to the penitentiary for a term and appealed—his first appeal—to the supreme court. The judgment of conviction was reversed and the case remanded for a new trial. The first supreme court decision in the case is reported. *Smith* v. *State,* 87 Miss., 627, s.c., 40 South., 229.

After the remand of the case the defendant was tried a second time; of course his second trial was for manslaughter. He was again convicted and sentenced to the penitentiary and appealed therefrom, this second appeal, to the supreme court.

The facts sufficiently appear in the opinion of the court.

*Leftwich & Tubb,* for appellant.

In this case the district attorney admitted what the witnesses would swear but intimated that there was a job put up on the jury somewhere and then introduced the stenographer to show that these witnesses did not testify at a former trial. Whether it was the fault of Smith, the witness, or of the attorneys for the defendant at the first trial, or whether the witness was then sick, or what other reason there might have been, is not in evidence, but certainly it is no impeachment of a witness at a second trial to show simply and only that he did not testify at the first. Lawyers are usually able to develop a case better at the second trial than at the first and we think the dealing of the district attorney with these witnesses of unimpeached character was harmful and it is this very thing the court animadverted upon in the case of *Scott* v. *State,* 80 Miss., 187, s.c., 31 South., 710.

Under the facts shown by this record it was of extreme importance to the defendant that the evidence presented to the jury should be carefully guarded from error. The state's case, if it should be conceded to have a case at all, hangs by too small a thread for error to be tolerated. It will be observed

that the learned district attorney below was not satisfied with the direct case affirmatively and positively made as to what occurred on the fatal encounter which only was competent, but he was constantly sidestepping in order to drag into the case the subsequent conduct of the defendant, or what occurred at the former trial of the case, or what was put in former motions for continuances, or who was introduced in evidence at the former trial, reproaching the defendant that he had never before testified, all of which hung as a cloud over the mind of the jury and prevented their dealing with the case as it was in a clear unprejudiced manner.

At the trial now under review defendant saw fit to take the stand in his own behalf and the learned district attorney then conceived, sidestepping again, that he might discredit his testimony by showing that he had not before testified in the case, either at the committal trial or at the first trial when he was convicted of manslaughter. *Bunckley* v. *State,* 77 Miss., 540; s.c., 27 South., 638; *Boyd* v. *State,* 84 Miss., 414, s.c., 36 South., 525.

In *Yarbrough's case,* 70 Miss., 593, this court held that all comment, friendly or unfriendly, was forbidden and said that a new trial would be granted regardless of the nature of the comment. In the *Sanders case,* 73 Miss., 444, s.c., 18 South., 541, the court reverses the case although the court rebuked the counsel and instructed the jury to disregard the comment and where the counsel asked the remark to be considered withdrawn. Now then, is a direct question made to the accused asking him if he had ever before testified in the case followed by the prompt objection of his counsel, anything more or less than a comment by the state's counsel, and an unfriendly comment at that? The jury saw at once that if it were possible for the defendant to answer that he had testified at a former trial, that the objection would not be interposed; they further saw from the argument of the defendant's counsel to the court that the answer would necessarily be in the negative, or the objection would not

be insisted upon. So that looked upon from every standpoint, the question is a comment upon the accused's failure to testify made by the prosecuting officer. The asking of this question under the circumstances we submit was fatal error.

Charge No. 2 asked by the district attorney is as follows: "The court charges the jury that they are the sole judges and weighers of the testimony and the credibility of the witnesses and in passing upon the testimony of any witness the jury may take into consideration the interest such witness may have in the result of the trial, if any, such has been shown by the testimony in the case." It must be clear to the court that this charge is another thrust at the testimony of the accused and is in violation of § 1918 of the Code of 1906 and § 1741 of the Code of 1892. The accused was the only person who had any interest, other than a sympathetic one, in the result of the trial. He was one of the three living witnesses to the difficulty; he was allowed by the law to speak in his own behalf and he ought to have been allowed to do so, without comment or reference by any charge made. The charge might just as well have called the name of defendant Smith as to have been given in the words in which it was written. It could possibly have no other effect upon the minds of the jury than to warn them to mistrust the defendant's testimony. This they are liable enough to do under the heavy cannonading in his final argument by the district attorney. If added to that, the court is also allowed to warn the jury against his testimony, the poor defendant is beyond the hope of having any heed at all paid to what he says. We especially direct the attention of this court to the frank, manly, open, unreserved, and unfaltering statements made by this defendant. He kept back nothing, he simulated nothing. Troubled by his enforced taking of the life of a former friend in an unfortunate row, coming quickly up between young men all alike guilty of being on a lark, he tells the facts appertaining to the difficulty and to his past life unreservedly and frankly.

The two annotations under § 1918 of the Code are as

follows: "The testimony of the accused should have such effect as it deserves unfettered by instruction to weigh it carefully and with great caution." Three several decisions by this court are cited in support of that annotation made by the learned Code commissioners and enacted into the laws by the legislature. That annotation is just as much legislative as the words of the section itself. The construction made in those three cases of this section as expressed in the annotation is enacted into the subsequent law by the legislature when the section is adopted followed by the annotation itself.

CALHOON, J., delivered the opinion of the court.

On the application for continuance the state agreed that the defense might read what the affidavit for it set forth would be sworn to by the absent witness, to have the same effect as if he had been present and had so testified. Notwithstanding this, the state was permitted in rebuttal, in a very close case as this is, to show by the stenographer that on the previous trial that witness had not been introduced by the defense. We think this error. It could have had no sort of bearing on the credibility of the absent witness, but was a direct assault on defendant's affidavit for the continuance; and this was not a trial for perjury in making that affidavit (*Scott* v. *State,* 80 Miss., 197, 31 South., 710), and was an overload on the accused.

We think it was error to give the state's second instruction. The defendant was the only witness to the fact in his own behalf, and the charge would have been no stronger if it had called his name and cautioned the jury, in its own language, to "take into consideration the interest such witness may have in the result of the trial." His testimony should not be so hampered by such express reference. See annotations to § 1918, Code 1906.

It was improper to allow the state to show, on the cross-examination of the witness Alred, that he claimed a reward for

arresting accused.   It had no bearing on what he had testified to, and could only tend to hamper the defense.

The question to defendant, as a witness, whether he had ever testified, was improper, and equivalent to a comment to the jury on his nonappearance as a witness on the previous trial of the case.   By all our adjudications this is sacred ground.   *Yarbrough* v. *State,* 70 Miss., 594, 12 South., 551; *Sanders* v. *State,* 73 Miss., 444, 18 South., 541; *Reddick* v. *State,* 72 Miss., 1008, 16 South., 490.   Rulings must be examined by the light of the evidence as a whole.

*Reversed and remanded.*